# Chambliss v. Mary Lee Coal & Railroad Co.

104  655
128  447

*Action to recover Damages for Personal Injury.*

1. *Evidence; irrelevant and illegal.*—In an action against a railroad

[Chambliss v. Mary Lee Coal & Railroad Co.]

company to recover damages for personal injury alleged to have been sustained by reason of a defect in a switch, while the plaintiff was undertaking to throw it, which caused the plaintiff to be thrown on the track in front of a moving engine, the statement by a witness who is shown to have used the switch before the accident, that "In throwing such a switch I have fallen towards the track," is irrelevant and illegal, and is not admissible in evidence.

2. *General charge of court to the jury; when given.*—When there is conflict in the evidence on the issue being tried, or the facts testified to admit of different inferences, the disputed question should be referred to the jury for determination, and the general affirmative charge should not be given at the request of either party, however clearly and satisfactorily the truth may have been established to the mind of the court, and though the court may consider the legal evidence authorizes but one conclusion.

3. *Action against a railroad company; wanton negligence or willful injury on the part of the engineer.*—In an action by an employé against a railroad company for personal injuries, alleged to have been caused by the wanton negligence or willful injury of the engineer, the plaintiff testified that he threw the switch under the orders of the engineer, and by reason of a defect in said switch he was thrown before a moving engine, which, after dragging him thirty feet, stopped immediately after running over him; that he began to halloo to the engineer immediately upon falling in front of the engine and continued to do so until the engine was stopped. The engineer testified that at the rate of speed the engine was moving he could have stopped the train within two feet; that he did not tell the plaintiff, who was his fireman, to throw the switch, and had not missed him from off the engine; that when he heard some one halloo he shut off the steam, looked out of the window, and when he saw plaintiff he reversed the engine and stopped it as quickly as he could. *Held*: The evidence was not sufficient to require a reference to the jury of the question as to whether or not the engineer was guilty of wanton negligence or intentional injury; and the court would be justified in giving the general affirmative charge for the defendant, since such evidence shows that the defendant was not guilty of wanton negligence and willful injury, as alleged in the complaint.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action brought by the appellant, by his next friend, against the appellee, to recover damages for personal injuries, alleged to have been inflicted by the negligence of the defendant. As originally filed the complaint contained two counts. After the remandment of the cause on the former appeal, the complaint was amended by adding three additional counts. The

averments of these counts, as well as such facts as are necessary to understand the decision on the present appeal, are sufficiently stated in the opinion.

Upon the cross-examination of the witness J. H. Stewart, he testified, among other things, as follows: ''If the switch is not well matched it is liable to catch and fly up either way; that the pony trucks of an engine are all the time playing from side to side, and if the switch rails were not well matched the flange of the wheels would strike the end of the switch gate and break it off and make the lever fly up, and still the engine would keep the main track.   In throwing such a switch, I have fallen toward the track.''   The defendant moved to exclude the statement ''In throwing such a switch, I have fallen toward the track,'' from the jury, on the ground that it was irrelevant and immaterial.   The court granted this motion, and the plaintiff duly excepted.   Upon the introduction of all the evidence, the court gave, at the request of the defendant, among others the following written charges, to the giving of each of which the plaintiff separately excepted:   (1.) ''If the jury believe the evidence, the plaintiff is not entitled to recover under the first count of the complaint.''   (2.) ''If the jury believe the evidence, the plaintiff is not entitled to recover under the third count of the complaint.''   (18.) ''Unless the jury believe from the evidence that the engineer actually knew of the peril of defendant in time to have prevented his injury, and with such knowledge failed to use the means in his power to prevent his injury, then the plaintiff is not entitled to recover under the fifth count of the complaint.''   (L.) ''There can be no recovery in this case on the fifth count of the complaint, unless the jury believe from the evidence that the engineer actually knew that the plaintiff was in a perilous position in time to have prevented the injury, and thereafter negligently or willfully omitted to use the means at hand to prevent the injury.''

There was judgment for the defendant, and the plaintiff appeals, and assigns as error the exclusion by the court of the statement of the witness Stewart, and giving of the several charges requested by the defendant.

Bowman & Harsh, for appellant.—The court erred in giving the general affirmative charges under the first count

[Chambliss v. Mary Lee Coal & Railroad Co.]

of the complaint.—*K. C., M. & B. R. R. Co. v. Webb*, 97 Ala. 157; *Bromley v.Birmingham Min.R. R. Co.*, 95 Ala. 397; *O. & M. R. R. Co. v. Collern*, 73 Ind. 261; *L. & N. R. R. Co. v. Perry*, 87 Ala. 394; 3 Lawson R. R. & P., § 1215 and note; *Griffith v. Burlington &c. R. R. Co.*, 72 Iowa. 645.

Charge L. was erroneous, and should not have been given, because it limits the engineers's duty to act in saving the plaintiff from injury to the time when "he actually knew" that plaintiff was in a perilous condition. *L. & N. R. R. Co. v. Webb*, 97 Ala. 308; *Ga. Pac. Railway Co v. Lee*, 92 Ala. 262.

SMITH & LOWE, *contra*, cited, *Mary Lee Coal & Railroad Co. v. Chambliss*, 97 Ala. 171; *R. & D. R. R. Co. v. Bivins*, 103 Ala. 142.

COLEMAN, J.—After the remandment of this case by this court on a former appeal (97 Ala. 171), the plaintiff amended the original complaint and added three other counts. Additional evidence was also introduced on the trial from which the present appeal is prosecuted.

The first count, as before, charges that the injury was caused by a defect in the condition of the ways, works and machinery, under subdivision one of section 2590 of the Code, viz., a defect in a switch. The second count charges that the injury was caused by the negligence of the engineer in charge or control of the engine, as provided in the 5th subdivision of section 2590 of the Code. The third count is under subdivision 2 of the Employer's Act (Code, § 2590, *supra*), and charges that the injury was caused by the negligence of the engineer, who had superintendence, &c. The fourth count is under subdivision three of section 2590, and avers that plaintiff was acting under the orders of the engineer, and the injury was caused by the negligence of the engineer. The fifth count, like the second, is under subdivision five, and charges that the engineer was guilty of wanton and intentional wrong. We find no legal objection to the complaint. It is clear and specific and in proper form.

There was no error in excluding the statement of the witness Stewart that "in throwing such a switch I have fallen towards the track." This answer was not responsive, and the fact stated was irrelevant and illegal.

On the former trial, this court held, that under the

evidence then introduced, the defendant was entitled to
the affirmative charge under the first count of the com-
plaint.   On the present trial the court gave this charge,
and this is assigned as error. . It becomes necessary to
examine the evidence in the present record, and see
whether the court was justified in giving this charge.
By statute (Code, § 2754) the court is prohibited from
charging on the effect of testimony, unless required to
do so by one of the parties.   The rule heretofore prevail-
ing in this court is that when there is any conflict in
the evidence, when the facts testified to admit of different
inferences, the affirmative.charge should not be given at
the request of either party, but the jury should be left
free to determine which is true, and to draw the infer-
ence.   It seems that a different rule prevails in some of
the States, and in the practice of the federal courts, and
that is, that in civil cases the court is justified in giving
the affirmative charge when the legal evidence authorizes
but one conclusion, so that if the jury should find con-
trary to it, the court, to prevent manifest injustice,
would be in conscience bound to set aside the verdict, as
being contrary to the evidence.   It is said the trial court
under such circumstances should not sit quiet, and per-
mit a jury to render a verdict, which when rendered,
upon motion, would be immediately set aside, or, if the
motion be denied, would be set aside upon application
to this court.   It seems to the writer that whether there
is any legal evidence before the jury which authorizes
different conclusions is a question of law for the court,
and not a question for the jury, and if the legal evidence
admits of but one conclusion, the better rule is, to in-
struct the jury as to its effect, upon the written request
of the parties.   The statute, in the opinion of the writer,
is not opposed to this view, and no injury could result
from this practice, as this court, under the present stat-
ute, is required to review the evidence, and to revise the
rulings of the court in granting or refusing motions for
a new trial.   The Chief Justice concurs in these views.
We will examine the evidence, under the rule which pre-
vails with us.

. . The plaintiff testified, that he had "pressed the lever
[of the switch] nearly down once and it had come up,
*   *   *   *   and he was stooping over it with both
hands on the lever, and was trying to press it down

again when it flew up and threw witness in front of the engine," &c. The witness Lett testified "that he was night watchman and had often thrown the switch, that it was hard to throw, and the switch handle would fly up, and that the switch had been in that condition for several months before plaintiff was hurt; that sometimes it would stay down; did not know what made it fly up; would never fly up more than to gap the switch a little bit." The witness Stewart, an expert, testified, that "if the switch is not well matched, it is liable to catch and fly up either way." John A. Milner, an expert, testified, "that if the switch is properly constructed the lever will not fly up," &c. Only two of the witnesses testified that the switch in question had a tendency to fly up. Stewart and Milner testified as experts. The record shows with sufficient clearness, that the switch was in court. A number of witnesses who had actual knowledge of the condition of the switch, testified that it was it was in good condition; and a number of experts, from personal examination, testified that its condition was good, and such as was in use on well regulated railroads. No witness pointed out any defect in the condition of the switch which would cause it to fly up. However great the trial court may have believed the evidence preponderated in favor of the good condition of the switch, as there was some evidence tending to show that the switch was in a defective condition, under the rule which prevails with us, the court should have referred the disputed question of fact to the jury.

There was evidence tending to show that although a switch may be in proper condition, if a moving train strikes the switch rails or gate of the switch at a certain point the force and weight of the train will sometimes cause the lever to fly up. If the jury should find in this case that the lever did fly up, and this was caused by the moving train, and not from any defect in the condition of the switch, they should find for the defendant under the first count.

The evidence in this record shows that the plaintiff was about sixteen years of age and inexperienced, and that he was employed by the engineer as a fireman and not as a switchman. We do not desire to add anything to what was said in the former opinion in this case, 97 Ala. 172, *supra*, as to the respective duties and liabili-

ties growing out of these conditions and relations. There was some evidence, tending to show that it was dangerous as a general proposition for an inexperienced person to undertake to throw a switch in front of a moving engine, while other witnesses testified that it would be dangerous or imprudent for an inexperienced boy to attempt to throw a "ground floor, lever switch, which had a tendency to fly up, before a moving engine." There were a number of witnesses who testified, that there was no danger in throwing the switch under consideration, or of one of like make and condition, before a moving engine. The evidence showed, without conflict that the engine had backed in from a siding on the main line, and stopped at a point not more than five or six feet from the switch. The plaintiff's purpose was to throw the switch, so that in moving forward the engine would keep on the main line. The evidence showed the train moved forward at a rate of speed less than the ordinary speed of a man's walk. The evidence showed that the engine did not leave the main line. There was evidence tending to show that under these conditions, the lever could not fly up, while there were other witnesses who testified that under such conditions the lever could not fly up with sufficient force to throw a person in front of an engine.

On these two questions of fact we have the plaintiff, although agreeing as to the distance the engine had moved and the rate of speed, testifying as a fact that the lever did fly up with sufficient force to throw him in front of the engine, and the witness Stewart testifying to the general proposition, that it was dangerous for an inexperienced person to attempt to throw a switch in front of a moving engine without regard to the speed of the train or the condition of the switch. The testimony of these two witnesses produces a conflict in the evidence on both issues. However clearly and satisfactorily the truth to the mind of the court may have been established, there was a conflict in the evidence, and under the rule which prevails with us, the disputed question should have been referred to the jury for determination. If the jury should disregard its plain duty, and return a verdict in any case palpably contrary to the evidence, the wrong must be remedied by the granting a new trial. These are the rules for the guidance of the trial court upon ques-

tions of disputed fact. Of course the general charge may be given when there is no conflict, and when all the evidence authorizes but one conclusion. If the jury believe this phase of the evidence, the plaintiff could not recover.

As to the fifth count, that which charges wanton negligence or willful injury, the plaintiff testifies that he threw the switch under the orders of the engineer; that after he fell the engine dragged him nearly thirty feet, and stopped immediately after running over his leg. The engineer testifies that at the rate of speed the train was moving, he could have stopped the train within two feet. Plaintiff testified that he began to halloo to the engineer at once and continued to do so, until the engine stopped. There were no other persons immediately present. The engineer testifies "that he looked out on the right hand side, saw that the switch had been thrown so as to let him up on the main track and he moved up; did not tell plaintiff to throw switch and had not missed him off the engine. Heard some one halloo, shut off steam, looked out of window of left side, saw plaintiff, and reversed engine as quick as he could." The train stopped almost immediately. Is there enough in this evidence to refer to the jury the question as to whether the engineer was guilty of wanton negligence or intentional injury, in that he failed or omitted the use of preventive effort after discovering plaintiff's peril, or after he was chargeable with a knowledge of it? We think not. The court would have been justified in giving for the defendant the general charge under the fifth count. This being true, although the wording of the charge given may not assert accurately the principle of law involved, no injury could have resulted therefrom to plaintiff.

Reversed and remanded.