(78 South. 833)

WESTERN RY. OF ALABAMA v. COLLINS. (2 Div. 668.)

(Supreme Court of Alabama. April 18, 1918. · Rehearing Denied May 30, 1918.)

1. CARRIERS ⊚═189—TARIFFS—RECOVERY OF DEFICIT.

Where agent of interstate carrier, accepting goods under bill of lading requiring payment of freight by the owner or consignee, inadvertently charged a lower rate than that on file with the Interstate Commerce Commission, the carrier could recover the amount of the deficit.

2. CARRIERS ⊚═196—TARIFFS—RECOVERY OF DEFICIT.

The liability of a consignee for freight charges is not affected by the carrier's waiving or losing its lien on the goods by delivery without first collecting freight.

3. CARRIERS ⊚═189—RECOVERY OF DEFICITS —ESTOPPEL.

Since the freight rate of an interstate shipment can be only that duly filed with the Interstate Commerce Commission under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1916, § 8563 et seq.), the carrier cannot, by accepting the lower rate, or by any other act, estop itself from demanding the lawful rate.

4. CARRIERS ⊚═194—RECOVERY OF DEFICITS.

Where interstate carrier accepted goods on order notify bill of lading at a rate lower than that scheduled with the Interstate Commerce Commission, and the owner and consignor attached a draft to the bill of lading which the consignee paid and the carrier collected the freight from the consignee, it could not thereafter recover from the consignor the deficit between the rate charged and the lawful rate, since equity and fair dealing would require the consignee to pay the entire charges.

Appeal from Circuit Court, Hale County; B. M. Miller, Judge.

Action by the Western Railway of Alabama against J. W. Collins, Jr. From a judgment for defendants, plaintiff appeals. Transferred from Court of Appeals under section 6, p. 449, Act of April 18, 1911. Affirmed.

The case made on the appeal is well stated by appellant as follows:

"This was a suit brought in the justice of the peace court, Gallion precinct, in Hale county, Alabama, by the appellant against the appellee, for the sum of $7.60, and interest, growing out of an undercharge on an interstate shipment of freight. Appellee, on or about March 9, 1912, shipped a carload of hay from Gallion, Ala., which is located on the Southern Railway, to West Point, Ga., located on appellant's line, over said lines of the Southern Railway and appellant, as connecting carriers, the appellant being the delivering carrier. Appellee shipped the hay to himself, being both consignor and consignee; the bill of lading being what is known as an order notify bill, providing that R. W. Scott, at West Point, Ga., should be notified. Appellee received the bill of lading, and attached the same to a draft drawn by him on Scott, and sent it to the First National Bank at West Point, Ga., for collection, which bank presented it to Scott, who paid the draft and obtained the bill of lading. Subsequently Scott presented the bill of lading to appellant and obtained the carload of hay. The rate specified in the bill of lading issued to appellee was 22½ cents per hundred. Appellant's agent at West Point, through mistake, collected from Scott as freight on the shipment, only 15.4 cents per hundred. The legal rate, according to the tariffs of both the Southern Railway and appellant on file with the Interstate Commerce Commission, as required by law, was 19.2 cents per hundred. Record, pp. 5, 6. On account of this mistake, the agent failed to collect the legal rate, as provided in the tariffs, and as required by the Interstate Commerce Law, the shortage or undercharge being $7.60, the amount sued for. The bill of lading provided that 'the owner or consignee shall pay the freight.' Record, p. 8. The case was tried on an agreed statement of facts, before the justice of the peace, who rendered a judgment in favor of appellee, the defendant. Appellant thereupon appealed the case to the circuit court of Hale county, where it was tried before Hon. B. M. Miller, judge of said court, on the pleadings or transcript of the record in the justice court (Record, pp. 1, 2), and a written agreed statement of facts filed in said cause (Record, p. 5). The circuit court rendered a judgment in favor of appellee (defendant below), to which judgment appellant (plaintiff below) duly and legally excepted. Record, pp. 4, 9. From this judgment, appellant has appealed to this court."

Steiner, Crum & Weil, of Montgomery, and Reese & Reese, of Selma, for appellant. Alex D. Pitts, of Selma, for appellee.

MAYFIELD, J. [1] There is no doubt that appellee or Scott, one or both, are liable to appellant for the amount sued for; it being the difference between the amount collected as freight, and the amount fixed by the federal statutes and the Interstate Commerce Commission, which is the legal rate. Emerson v. Central of Georgia Railway Co., 196 Ala. 280, 72 South. 120, L. R. A. 1916F, 120.

In the case of Southern Railway Co. v. Harrison, 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936, the Supreme Court, through Brickell, C. J., said that a

contract for the transportation of an interstate shipment at less than the published rate approved by the Interstate Commerce Commission is invalid, and the carrier may collect the rate as published, regardless of the rate fixed by the bill of lading. 5 Ala. App. 660, 59 South. 683.

The case of Armour Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681, declares the decision of the Supreme Court of the United States, to the effect that the tariff rate, when fixed and approved by the Interstate Commerce Commission and published by law, is read into the contract of affreightment, and becomes a part thereof.

A carrier may recover the legal rate due it on an interstate shipment, although an agent may make a mistake as to the amount due under the legal rate, and through such mistake deliver the freight to the consignee upon the payment of a less sum than the legal rate. L. & N. R. R. Co. v. McMullen, 5 Ala. App. 666-669, 59 South. 683.

A carrier may look either to the consignor, with whom the contract of shipment is made, or to the consignee, for the freight. 9 Ala. App. 419, 64 South. 202.

[2] The liability of a consignee for freight charges is not affected by the carrier's waiving or losing its lien on the goods by delivery without first collecting the freight. Cen. of Ga. v. Birmingham Co., 9 Ala. App. 419, 64 South. 202.

[3] Under the Interstate Commerce Act, the freight rate of an interstate shipment is not that named in the bill of lading or contract of shipment, but the lawful rate existing at the time, whether or not such rate is known to the consignor or consignee, and regardless of whether the parties were misled by the carrier as to the lawful rate, or whether it had posted the lawful rate as required by the statute; hence the carrier cannot, by any act, estop itself from demanding the lawful rate. Cen. of Ga. v. Birmingham Co., 9 Ala. App. 419, 64 South. 202.

[4] If appellant had not delivered the freight to Scott, and had elected to collect the freight from him who was the real owner of the goods, after the draft was paid, it could have collected the legal rate from appellee, who was the real consignor and nominally the consignee also; but this arrangement was only for the purpose of his retaining title to the freight until the purchase price was paid under the contract of shipment order notify Scott. When Scott was notified, and he paid the draft and received the bill of lading, he was in law the consignee and owner of the goods shipped. The carrier could have delivered the freight to Scott, and have collected the charges from appellee or from Scott, but not from both. It chose to collect the charges from Scott, who was the then owner of the goods. Having so chosen, and collected a part from him, it must from him collect all. It

is true that there is no question of estoppel, by its collecting a part of the charges only and delivering the goods to Scott, who was then the owner; but there is the question of fair dealing, which does and ought to control.

The case of Yazoo & M. V. R. Co. v. Zemurray, 238 Fed. 789, 151 C. C. A. 639, is a case directly in point. It was decided in the district court in favor of the consignor, and the decision was on appeal to the Circuit Court of Appeals affirmed. That decision is well stated in the headnote as follows:

"Though the carrier can, notwithstanding the usual clause of the bill of lading as to delivery to the consignees on payment of the freight, and regardless of the ownership of the goods, waive its lien and recover the freight from the consignor, where the carrier attempted to collect from the consignee, but through error collected only a part of the amount due, and could thereafter have collected the balance from the consignee who owned the goods, from other goods in its possession, it will be bound by its election to collect from the consignee and not permitted to sue the consignor for the balance."

The trial was had before the judge without a jury, and without any formal pleading. It may be, as is insisted by appellee, that the action, if the right ever existed, was barred by the statute of limitations; but as to this we do not decide, preferring to place the decision on the question decided by the district judge in the case of Zemurray, cited above. It is true this is not, strictly speaking, a case of election, but is one of fair dealing, to promote justice between all the parties.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.